IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA

VS.                                                                                              Criminal Case No. 21-00223-KD

WILLIAM EUSEBIO PINCAY ANCHUNDIA

_____/

**MOTION TO DISMISS THE INDICTMENT**

COMES NOW WILLIAM E. PINCAY ANCHUNDIA the defendant in the above captioned cause, by and through counsel, and hereby moves to Dismiss the Indictment for lack of jurisdiction.  In support thereof, Williams E. Pincay Anchundia shows the following:

**The power granted Congress to define offenses against the law of nations does not grant Congress the authority to punish conduct that is not a violation of the law of nations.**

1. The power granted Congress to define offenses against the law of nations does not grant Congress the authority to punish conduct that is not a violation of the law of nations.  The Supreme Court explained that the power to "define" in Article 1, Section 8, Clause 10 is limited by the three specific subject of the Clause.  *United States v. Bellaizac-Hurtado,* 700 F.3d 1245, 1249 (11th Cir. 2012.)

2. The Maritime Drug Law Enforcement Act ("MDLEA") was passed as an exercise of congressional authority granted to it by the Constitution.   "The Supreme Court interpreted that to contain three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish

1

offenses against the laws of nations. *See United States v. Smith,* 18 U.S. (5 Wheat.)153, 158-59, 5L. Ed. 57 (1820)". *See United States v. Bellaizac-Hurtado,* 700 F.3d 1245, 1248 (11th Cir. 2012.)[1]

3. The MDLEA makes it a crime to conspire to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States. 46 U.S.C. §§ 70503(a)(1), 70506(b).

4. In *Bellaizac-Hurtado,* the court noted that the Government relied on the third grant-the Offense Clause as the source of congressional power to proscribe the defendants' drug trafficking in the territorial waters of Panama. The court held that because drug trafficking is not a violation of customary international law, Congress exceeded its power under the Offense Clause to the extent it proscribed the defendant's conduct in the territorial waters of Panama.

5. The Court distinguished its earlier precedents in which it considered the constitutionality of the extraterritorial application drug laws with the observation that they all involved conduct on the high seas. *Bellaizac-Hurtado* at 1257. In other words, the second grant in-the Offense Clause.

**Determination of jurisdiction is a "Preliminary Question of Law." Objections to Jurisdiction may be raised at any time.**

6. The MDLEA also states that "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense" and that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a).

7. The 11th Circuit Court of Appeals has "interpreted the 'on board a vessel subject to the jurisdiction of the United States' portion of the MDLEA as a congressionally imposed limit on courts' subject matter jurisdiction, akin to the amount- in-controversy requirement contained in 28 U.S.C. § 1332." *United States v. Iguaran,* 821 F.3d 1335, 1336 (11th Cir. 2016) citing, *United States v. De La Garza,* 516 F.3d 1266, 1271 (11th Cir.2008) (citations omitted).

---

[1] *Bellaizac-Hurtado* is cited here because it provides the 11th Circuit's view of the Congressional authority and limits placed upon Congress' ability to define offenses against the law of nations.

8. In *United States v. Iguaran,* 821 F.3d 1335, 1336 (11th Cir. 2016), the court vacated and remanded where the district court failed to "expressly make any factual finding with respect to its jurisdiction, *id.* at 1337(citing *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434, 131 S.Ct. 1197, 1202 (2011) (noting that 'objections to subject matter jurisdiction. . . may be raised at any time.)). *Id.* 1336.

9. In *Iguaran*, 821 F.3d 1335, 1337 (11th Cir. 2016) the court observed that:

> The MDLEA identifies various circumstances that would render a vessel subject to the jurisdiction of the United States. For example, "a vessel without nationality" counts as a "vessel subject to the jurisdiction of the United States" for purposes of the MDLEA. 46 U.S.C. § 70502(c)(1)(A). In turn, the term "vessel without nationality" includes "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B). Under those definitions, if Iguaran and his coconspirators failed, on request of the United States officials who apprehended them, to "make a claim of nationality," their vessel was "without nationality" and "subject to the jurisdiction of the United States."

10. Since the district court made no factual findings with respect to jurisdiction in *Iguaran, t*he government argued that Iguaran plea and factual proffer, as well as the presentence investigation report establishes the district court's jurisdiction. Iguaran plead guilty to conspiring to possess with intent to distribute cocaine.

11. The court rejected the government's argument stating that it has repeatedly held, "parties may not stipulate to jurisdiction. *Iguaran* at 1337, citing *W. Peninsular Title Co. v. Palm Beach,* 431 F.3d 1490 n. 4 (11th Cir. 1995). Subject matter jurisdiction cannot be assumed by the court, nor can it be waived by the parties. *Iguaran* id at 1337.

> **The USCG records establish that William Eusebio Pincay Anchundia was Identified as the Master, he claimed Ecuadorian nationality and Ecuadorian nationality for the vessel. All crew members produced official Ecuadorian identifications in support and in accordance with 46 U.S.C. § 70502(d)(1)(C).**

3

12. In the Complaint filed in this case, [Doc. 1], the government alleged the following in support of its claim that the vessel was subject to the jurisdiction of the United States:

> On November 9, 2021the U.S. Coast Guard on patrol in the Eastern Pacific Ocean (EPAC), under U.S.C.G, District 11 Tactical Control (D11 TACON), aboard the U.S.C.G. vessel Harry Dewolf (HDW).
>
> The U.S.C.G discovered a "target of interest" which had the profile of a Go-Fast Vessel. (GFV).
>
> The GFV was at coordinates 10-01, 46N 106-58.62SW, approximately 232 nautical Miles East of Clipperton Island, France, an uninhabited atoll owned by France.
>
> The DeWolf launched a rigid inflatable boat to intercept. When they arrived on the scene, they came alongside the compliant target vehicle. The boarding team reported visible packages on deck. The boarding team gained control of the vessel with no apparent resistance.
>
> The Coast Guard reports that there were three persons on board: William Eusebio Pincay Anchundia, Jorge Luis Lopez Pincay, and Ivan Darwin Anchundia Pincay.
>
> A "Master" on board the GFV claimed Ecuador nationality.
>
> "Based on the results of the right to visit (ROV) the USCG, enacted protocols, and commenced forms exchange." Ecuador responded to the forms exchange and could neither confirm nor deny the nationality of the vessel.
>
> D11-Tacon authorized DeWolf to treat the vessel as "without nationality"" and conduct a full law enforcement boarding. Field test yielded positive results for cocaine. The crewmembers of the GFV were detained.[2]

13. Neither the Complaint, nor the Indictment in the instant case cite to a specific jurisdictional provision. The complaint does allege facts that bear on the court's jurisdictional inquiry. The complaint states that the Master William E. Pincay Anchundia claimed Ecuadorian nationality. It also states that that the Coast Guard was authorized to treat the targeted vessel a vessel "without nationality.

---

[2] Exhibit A -Complaint

14. In accordance with the statutory provisions, the only jurisdictional provision that appears to be applicable under the circumstances described in the complaint appears to be 46 U.S.C. § 70502(d)(1)(C). [3]

15. The U.S. Coast Guard documents identified William Eusebio Pincay Anchundia as the Master and allege that he claimed Ecuador Nationality for the vessel. The government "Victor" report states that William E. Pincay Anchundia claimed Ecuador Nationality for the vessel. [4]

16. While "nationality" and "registry" are not generally interchangeable, the MDLEA treats them as such pursuant to § 70502(e). All crew members had Ecuadorian Passports and, Ecuadorian Cedula (Identification Cards)[5] consistent with 46 U.S.C. § 70502(d)(1)(C).

---

[3] § 70502. Definitions, 46 USCA § 70502

**(d) Vessel without nationality. —**

    **(1) In general.** --In this chapter, the term "vessel without nationality" includes—

**(A)** a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed.

**(B)** a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and

**(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.**

**(e) Claim of nationality or registry.** --A claim of nationality or registry under this section includes only—

    **(1)** possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas.

    **(2)** flying its nation's ensign or flag; or

    **(3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.**

[4] Exhibit B -U.SC.G. Victor report.
[5] Exhibit C.

17. Correspondence between the U.S.C.G and Ecuadorian authorities establish that it could neither confirm nor deny the vessel's nationality. Bates 530, 532 and 534. [6] .

18. In *United States v. Dávila-Reyes* 23 f.4th 153, 189, the court addressed that precise issue,

> As we have explained, the master's oral declaration has long sufficed under international law to establish a presumption of nationality. See, e.g., N.P. Ready, Ship Registrations 3 (3d ed. 1998) ("A vessel may be considered as possessing the nationality of a State even though she is unregistered, possesses no documents evidencing that nationality, nor even flies the flag of that State."); see also Aybar-Ulloa, 987 F.3d at 5 (observing that, "[w]ithout a flag or papers, a vessel may also traditionally make an oral claim of nationality when a proper demand is made" (quoting Matos-Luchi, 627 F.3d at 5)). 52 That presumption is sensibly overcome by the named country's express denial of the claim, a scenario long embedded in international law.

19. In describing the flaw, or problem with 46 U.S.C. § 70502(d)(1)(C), the *Dávila-Reyes* panel observed.

> --[E]ven where the circumstances offer no rationale for displacing the prima facie showing of nationality established through a verbal claim, § 70502(d)(1)(C) treats a vessel as stateless based solely on the named country's failure to respond "affirmatively and unequivocally" to U.S. inquiry. The statute on its face is thus inconsistent with international law, 61 and we have no license to rewrite it to satisfy constitutional requirements. See Iancu v. Brunetti, —— U.S. ——, 139 S. Ct. 2294, 2301, 204 L.Ed.2d 714 (2019) (stating that, although the Court "may interpret 'ambiguous statutory language' to 'avoid serious constitutional doubts,' ... '[w]e will not rewrite a law to conform it to constitutional requirements'" ((first quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 516, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009), and then quoting United States v. Stevens, 559 U.S. 460, 481, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010)))(citations omitted.)

.

**Congress exceeded its constitutional authority to define and punish felonies committed on high seas, by enacting MDLEA's § 70502(d)(1) (C) expanding the definition of "vessel without nationality" beyond the bounds of international law to encompass vessels that are not in fact without nationality under international law.**

20. As noted earlier, in *U.S. v. Bellaizac-Hurtado* the Eleventh Circuit held, that because drug trafficking is not a violation of customary international law, Congress exceeded its power, under

---

[6] EXHIBIT D - Ecuadorian Correspondence

6

the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama.

21. Mr. William Eusebio Pincay Anchundia submits that Congress exceeded its constitutional authority to define and punish felonies committed on high seas, by enacting an MDLEA's provision expanding definition of "vessel without nationality" beyond the bounds of international law.  Section 70502(d)(1) (C) of the MDLEA defines "vessel without nationality" to encompass vessels-- including their own -- that are not in fact without nationality under international law.  A conflict exists with 46 U.S.C. § 70502(d)(1)(A), (B), and (C), because the provision treats a vessel as stateless despite a claim of nationality being made through a method long acceptable under international law -- specifically, in this case, the master's verbal claim -- if the named country does not "affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C).

22.  That was precisely the same challenge made successfully in *United States v. Davila Reyes,* 23 F.4th 153 (2nd Cir. 2022) (In that case, the court held that that as a matter of apparent first impression, Congress exceeded its constitutional authority to define and punish felonies committed on high seas, by enacting MDLEA's provision expanding definition of "vessel without nationality" beyond bounds of international law.)

> "Although several of our sister circuits have addressed whether the MDLEA is, in general, a constitutional exercise of Congress's authority under the Felonies Clause, it appears that no circuit has considered the specific authority for § 70502(d)(1)(C)'s definition of a "vessel without nationality." Instead, courts have assumed that the MDLEA applies only to vessels that would be subject to U.S. jurisdiction under international law, i.e., U.S. vessels and those meeting the international law definition of statelessness. *See, e.g., United States v. Ballestas*, 795 F.3d 138, 146-47, 417 U.S. App. D.C. 401 (D.C. Cir. 2015) (holding that Congress had authority under the Felonies Clause to punish a defendant for conduct committed by his co-conspirators aboard a stateless vessel on the high seas); *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014) (stating that "we have long upheld the authority of Congress to 'extend[] the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances'" (quoting United States v.

*Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982)) (alteration in original)); *United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006) (holding that the MDLEA's punishment of drug trafficking "on board a vessel subject to the jurisdiction of the United States" is within Congress's constitutional authority); *United States v. Moreno-Morillo*, 334 F.3d 819, 824 (9th Cir. 2003) (citing *United States v. Davis*, 905 F.2d 245, 248 (9th Cir. 1990), for the proposition that "this court clearly has held that the MDLEA is constitutional" in a case where the statelessness of the vessel was uncontested). We have thus found no precedent squarely addressing the argument that appellants make here: that the definition of a "vessel without nationality" in § 70502(d)(1)(C) is broader than the definition of a stateless vessel under international law and is therefore unconstitutional."

*United States v. Davila Reyes, 23 F.4th 153, 172-173 (2nd Cir. 2022)*

23. While the 11th Circuit has not yet considered this argument, *Dávila-Reyes*, is consistent with its jurisprudence. Like the rulings in this circuit, the First Circuit reasoned first that the Framers of the Constitution "intended international law to be a constraint on Congress's authority '[t]o define and punish … Felonies committed on the high Seas." *Dávila-Reyes*, id at 195. Hence the U.S. Supreme Court's early decisions "that Congress lacked authority under the Felonies Clause to extend U.S. jurisdiction to felonies committed by foreign nationals on foreign vessels." *Id.* (See Furlong, 18 U.S. (5 Wheat.) at 198; Palmer, 16 U.S. (3 Wheat.) at 632-34. U.S. Const. art. 1, § 8 cl. 10.[7] With § 70502(d)(1)(C), Congress violated this principle, extending U.S. jurisdiction beyond the limits of international law and, hence, beyond the authority conferred by the Felonies Clause.

---

[7] While the First Circuit just reached this constitutional issue in 2022, observers have consistently noted that Congress's enactment of the MDLEA exceeded the powers it was granted by the Define and Punish Clause. *See United States v. Cardales-Luna*, 632 F.3d 731, 740 (1st Cir. 2011) (Torruella, J., dissenting). This follows from two centuries of precent. In *United States v. Furlong*, 18 U.S. (5 Wheat) 184, 197 (1820), for example, the Supreme Court held that Congress could not punish "offen[ses] committed by a foreigner upon a foreigner in a foreign ship." The Court emphasized that under the Define and Punish Clause, Congress must delineate offenses by referencing the definition of the crime under international law. Congress cannot extend its Universal Jurisdiction ("UJ") to offenses that are not piracies under international law. Eugene Kontorovich, *Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction over Drug Crimes*, 93 Minn. L. Rev. 1191, 1210, 1215 (2009).

24.

                        Respectfully submitted,

                        s/CARLOS A. WILLIAMS WILL9821)
                        11 North Water Street Suite # 11290
                        Mobile, Alabama 36602
                        251-433-0910
                        251-433-0686 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2021, a copy of the above and foregoing instrument was furnished to the Assistant U.S. Attorney assigned to this case, by e-mail, to AUSA Sinan Kalayoglu, and AUSA George May.

                        s/CARLOS A. WILLIAMS