IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) CRIMINAL ACTION: 1:21-00223-KD-B |
| | ) |
| WILLIAN EUSEBIO PINCAY ANCHUNDIA, | ) |
| *et al.*, | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on Defendant Willian Eusebio Pincay Anchundia's motion to dismiss the indictment for lack of jurisdiction (Doc. 31), Defendant Jorge Louis Lopez Pincay's motion to dismiss the indictment for lack of jurisdiction (Doc. 34), and the United States of America's Response (Doc. 39); and the United States of America's Motion to Continue (Doc. 38).

**I.      Motions to Dismiss**

The Court bases this decision on the facts that are recounted in the defendants' briefs or attachments (or not challenged) for purposes of determining the challenge to the constitutionality of 43 U.S.C. § 70502(d)(1)(C),[1] as applied in this case. That is, the Court finds that the vessel was interdicted on the high seas, that the captain of the vessel claimed that the vessel was registered in Ecuador, that the occupants of the vessel were Ecuadorian nationals, and that the Ecuadorian government failed to confirm or deny that the vessel was registered in Ecuador.

---

[1] **(d) Vessel without nationality.**-- **(1) In general.**--In this chapter, the term "vessel without nationality" includes-- ... **(C)** a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

1

The defendants argue that the United States does not have jurisdiction to prosecute them because their claim that the vessel was registered in Ecuador was not rebutted. Specifically, the defendants argue that per United States v. Davila-Reyes, 23 F.4th 153, 194-195 (1st Cir. 2022), the jurisdictional grant in 43 U.S.C. § 70502(d)(1)(C) is unconstitutional as applied in this case because it violates international law by failing to give proper due to a captain of the vessel's claim of registration. According to Davila-Reyes, under international law, if a captain names a country of registry there is a presumption that the vessel is not stateless, which can only be overcome by "conflicting signals" (*e.g.*, the crew is of a different nationality). Id. at 193.

The United States responds, in part, that Davila-Reyes conflicts with Eleventh Circuit precedent in Campbell and Hernandez. In United States v. Campbell, 743 F.3d 802 (11th Cir. 2014), the United States authorities encountered a vessel on the high seas which contained marijuana. The master of the vessel claimed it was registered in Haiti, but Haiti would neither confirm or deny the claim. The Eleventh Circuit addressed the defendant's claim that allowing United States jurisdiction over the crime was unconstitutional because the United States failed to show any connection of the crime to the United States (nexus). The court held that 43 U.S.C. § 70502(d)(1)(C) was a valid exercise of the United States' jurisdiction. Id. at 810 ("we have long upheld the authority of Congress to 'extend[] the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances[]'"). The court defined the vessel in Campbell, under identical facts and per the statute, as a "stateless vessel." Id. at 810 (citations omitted) ('Stateless vessels, such as the one Campbell boarded, are 'international pariahs' that have 'no internationally recognized right to navigate freely on the high seas[]'"). However, the court was not faced with a constitutional challenge to the definition of a stateless vessel in international waters under international law.

In United States v. Hernandez, 864 F.3d 1292 (11th Cir. 2017) the Court addressed a statutory challenge to whether the vessel was "stateless" for purposes of U.S. jurisdiction. In Hernandez, the Guatemalan government was consulted and neither confirmed or denied that the vessel was registered in Guatemala. However, the defendant argued that because the vessel was actually registered in Guatemala and the Coast Guard possessed identifying information about the ship that would easily have confirmed its registry, the United States did not have jurisdiction. The court rejected the argument noting that certification of the Guatemalan response was all that was required to establish the vessel as stateless. Id. at 1299 ("Interpreted as a statutory jurisdictional argument, the defendants' argument cannot overcome the conclusive-proof provision of the MDLEA[]").

Next the United States argues that international law does not limit Congress' ability to constitutionally define and punish felonies on the high seas. The Court agrees. In United States v. Bellaizac-Hurtado, 700 F.3d 1245, 1251 (11th Cir. 2012), a case relied upon by defendants, the Court held that "we look to international law to ascertain the scope of power granted to Congress under the Offences Clause." However, the Court did not address whether the ability to define felonies on the high seas required Congress to look to international law when defining when a vessel was stateless. And considering that Bellaizac-Hurtado was concerned with "offenses against the law of nations," which necessarily implicates international law, it provides no support for the defendants' argument that Congress is limited to defining a stateless vessel in accordance with international law.

Instead, the Eleventh Circuit has indicated that the court is without authority to consider whether international law limits Congress' ability to define when a vessel is stateless. The court in Hernandez addressed whether the Coast Guard's failure to abide by its treaty promise to the

Guatemalan government to convey all available identifying information when asking about a ship's registry, violated international law and thus deprived the United States of jurisdiction over the vessel.  Hernandez, 864 F.3d at 1299-1301.  The court pointed to the statutory language in MDLEA and held that "'[a] failure to comply with international law does not divest a court of jurisdiction and is not a defense." 46 U.S.C. § 70505.  Id. at 1302.  Again, the Eleventh Circuit was interpreting the statutory language of the MDLEA and did not address the constitutionality of the statute.  Id. ("the defendants' international law argument does not touch the conclusion that the United States properly exercised statutory jurisdiction over this suit[]").  However, the court specifically held that whether "the vessel was stateless under international law" was not an issue for the Court but rather was a question of international law "to be handled by the executive branch, nation-to nation, in the international arena." Id. at 1304 ("by relying on the certification to exercise MDLEA jurisdiction over this case, we are not holding that the *Cristiano Ronaldo* was stateless under international law at the time of the criminal conduct[]").  The court further explained that:

> In the MDLEA, Congress has delineated between judicial and diplomatic compliance with international law limits on criminal jurisdiction over the actions of aliens on ships on the high seas, with respect to limits on both prescriptive and enforcement jurisdiction. To the extent that we determine a particular case to be on the diplomatic side of those lines, we are not necessarily saying that the United States could exercise territorial jurisdiction under international law limits, but only that Congress has determined that the question, if there is one, is to be dealt with diplomatically and not by the courts ...

Id.  Accordingly, the Eleventh Circuit has determined that whether a vessel is stateless under international law is not an issue to be determined by the courts.  Rather, because it is a proper exercise of power under the Constitution for Congress to define a stateless vessel, courts look only to the definition as provided by the statute.

As such, the defendants' motions to dismiss the indictment (Docs. 31, 34) are **DENIED.**

4

**II.     Motion to Continue**

The United States moves to continue the trial of this case until the June 2022 Criminal Trial Term. (Doc. 38). Upon consideration, the motion to continue is **GRANTED** based upon the consent of the defendants and pursuant to 18 U.S.C.A. § 3161(h)(3)(A), because essential witnesses (*i.e.*, Coast Guard personnel on sea duty) are not available. See United States v. Barragan, 793 F.2d 1255, 1258 (11th Cir. 1986)( "[T]he fact that the Coast Guard witnesses were on sea duty during August 1984 rendered them "unavailable" during the time they were on duty.")

**DONE** and **ORDERED** this the **22nd** day of **March 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**